*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LAURA FRANCKE,

        Plaintiff-Appellant,

v

BOTSFORD GENERAL HOSPITAL, also known as
BEAUMONT HOSPITAL FARMINGTON HILLS,
RAYMOND T. HAJJAR, D.O. AND
CHRISTOPHER LUMLEY, D.O., PC,
AESTHIQUE II, PLLC, WOMEN FIRST HAJJAR,
PLLC, BOTSFORD ANESTHESIOLOGISTS, PC,
CHRISTOPHER LUMLEY, D.O., JEFFREY T.
DESANO, D.O., AARON R. WOOD, D.O.,
BRIDGET R. BEAUDOIN, CRNA, and PATRICK
J. SARSOZO, CRNA,

        Defendants-Appellees,

and

BOTSFORD PHYSICIANS, PC, and BOTSFORD
MEDICAL GROUP,

        Defendants.

UNPUBLISHED
September 19, 2024

No. 365734
Oakland Circuit Court
LC No. 2021-186691-NH

Before: LETICA, P.J., and GARRETT and FEENEY, JJ.

PER CURIAM.

In 2017, plaintiff, Laura Francke, underwent a double mastectomy with reconstructive surgery after doctors diagnosed her with breast cancer. Afterwards, Francke had multiple revision surgeries, including the one at issue, while under the care of defendants, after which she was diagnosed with injuries to her left shoulder and arm. Francke filed this medical malpractice action and alleged that defendants negligently caused her injuries and she now appeals the trial court's

order granting summary disposition under MCR 2.116(C)(10) to defendants, Botsford General Hospital, also known as Beaumont Hospital Farmington Hills ("Botsford General"); Raymond T. Hajjar, D.O. and Christopher Lumley, D.O., PC ("Hajjar-Lumley PC"); Aesthique II, PLLC ("Aesthique"); Women First Hajjar, PLLC ("Women First"); Botsford Anesthesiologists, PC ("Botsford Anesthesiologists"); Christopher Lumley D.O.; Jeffrey T. Desano, D.O.; Aaron R. Wood, D.O.; Bridget R. Beaudoin, CRNA; and Patrick J. Sarsozo, CRNA.

We reverse the trial court's order because we agree with Francke that expert testimony established genuine issues of material fact on a breach of the standard of care, negligence, and causation.

I.  BACKGROUND AND PROCEDURAL HISTORY

Francke had the revision surgery in September 2018 to address implant failure and excess tissue.  During the procedure, Desano assisted Lumley, and Wood, Beaudoin, and Sarsozo provided anesthesia to Francke.[1]  The anesthesia providers noted that Francke was placed in the "supine"[2] position throughout the surgery, which lasted an hour and 45 minutes.

Following the surgery, Francke felt severe pain in her neck, left shoulder, arm, and hand that she did not have before the surgery.  Postoperatively, Franke also had numbness, tingling, and weakness in her left arm radiating to her fingers, and she could not use her left arm.  Francke's pain level between her surgery and her postoperative visit remained constant and severe.  Lumley's notes from the first postoperative visit stated that Franke's pain was "likely positional from the operating room table."  After multiple return visits, during which Francke continued to report persistent and worsening pain, loss of functionality, numbness, and range of motion limitations, Lumley recommended an electromyography (EMG), and that Francke see an orthopedic specialist for further evaluation.

Francke's EMG showed evidence of "a severe, left pan-sensory, posterior cord, and lateral trunk/medial cord brachial plexopathy with acute/chronic denervation and early reinnervation." A month later, a neurologist diagnosed Francke with brachial plexopathy likely cause by "a stretch injury to the nerve."  Francke claims that the injury resulted in permanent pain, numbness, and limited motion in her left arm.

---

[1] Lumley and Desano practiced medicine at Botsford General, Hajjar-Lumley PC, Aesthique, and Women First.  Wood, Beaudoin, and Sarsozo practiced medicine at Botsford General, Hajjar-Lumley PC, Aesthique, Women First, and Botsford Anesthesiologists.

[2] We discuss in greater detail defendants' use of the word "supine" and its meaning in this case, but the parties agree that the basic definition of "supine" means that Francke was lying on her back, facing upward.

Francke filed her complaint in March 2021, alleging claims of negligence against Lumley, Desano,[3] Wood, Beaudoin, Sarsozo, and the corresponding defendant entities with which they practiced.[4] Specifically, Francke alleged that defendants breached the standard of care during her surgery by improperly positioning her and failing to properly pad or protect her upper extremity from a pressure or position injury. According to Francke, because of this negligence, she suffered a permanent injury to her rotator cuff, ulnar nerve, radial nerve, and brachial plexus.

Francke's experts, nurse anesthetist, Garalynn Tomas; anesthesiologist, Ruchir Gupta; plastic surgeon, John Perrotti; and neurologist, David Preston, testified that the surgical record did not provide enough information to know the position of Francke's arms, or if defendants moved Francke during the surgery. The experts agreed that any movement of Francke's body while she was unconscious, particularly the placement of her arms at an angle greater than 90 degrees, would have presented a risk of nerve injuries like the injuries Francke suffered.

Defendants, Botsford General, Hajjar-Lumley, Botsford Anesthesiologists, Lumley, Wood, Beaudoin, and Sarsozo, moved for summary disposition under MCR 2.116(C)(10). The trial court granted defendants' motion and ruled that Francke's expert testimony that her injuries were caused by positioning during surgery were "assumptions . . . not in accord with the established facts." The trial court also ruled that Francke's experts formed their opinions because they did not believe the notes in Francke's chart, but that this did not establish any breach of the standard of care. The trial court also ruled that Francke's evidence did not support an inference of negligence under the doctrine of res ipsa loquitur. As the trial court specifically opined:

> [Francke's] injuries may occur absent negligence, as was established through medical literature as well as [Francke's] own experts. . . . [Francke] cannot simply point to the fact that she did not have these injuries prior to surgery. A bad result is not itself sufficient to satisfy the first element of res ipsa loquitor. [Francke] must also produce some evidence of wrongdoing beyond the mere happening of the event to rely upon res ipsa loquitor.

This appeal followed.

## II. STANDARD OF REVIEW

We review summary disposition rulings de novo. *Grossman v Brown*, 470 Mich 593, 598; 685 NW2d 198 (2004). We also review de novo whether the doctrine of res ipsa loquitur is applicable in a particular case. *Jones v Porretta*, 428 Mich 132, 154 n 8; 405 NW2d 863 (1987).

---

[3] The trial court entered a stipulated order of dismissal of Desano, with prejudice, in November 2022.

[4] The trial court entered a stipulated order dismissing defendants, Botsford Physicians, PC, and Botsford Medical Group, without prejudice in May 2021.

As this Court explained in *Shivers v Covenant Healthcare Sys*, 339 Mich App 369, 382-383; 983 NW2d 427 (2021):

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). When deciding a motion for summary disposition brought under MCR 2.116(C)(10), the court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted in the light most favorable to the nonmoving party. See MCR 2.116(G)(5); *Joseph*, 491 Mich at 206. It must draw all reasonable inferences in favor of the nonmoving party. *Dextrom v Wexford Co*, 287 Mich App 406, 415-416; 789 NW2d 211 (2010). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

The trial court may not make findings of fact or weigh credibility in deciding a motion for summary disposition. *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018). "[I]f the evidence before it is conflicting, summary disposition is improper." *Lysogorski v Bridgeport Charter Twp*, 256 Mich App 297, 299; 662 NW2d 108 (2003) (emphasis removed, quotation marks and citation omitted).

## III. ANALYSIS

We agree with Francke that the trial court erred by dismissing her claims because she presented evidence to establish a genuine issue of material fact that defendants breached the standard of care, and she presented evidence to establish causation through the doctrine of res ipsa loquitor.

As our Supreme Court ruled in *Craig v Oakwood Hosp*, 471 Mich 67, 86; 684 NW2d 296 (2004), in a claim for medical malpractice, a plaintiff must establish "(1) the appropriate standard of care governing the defendant's conduct at the time of the purported negligence, (2) that the defendant breached that standard of care, (3) that the plaintiff was injured, and (4) that the plaintiff's injuries were the proximate result of the defendant's breach of the applicable standard of care."

In professional malpractice actions, an expert is usually required to establish the standard of conduct, *Gay v Select Specialty Hosp (In re Estate of Wright)*, 295 Mich App 284, 292; 813 NW2d 354 (2012), breach of that standard, *Gonzalez v St John Hosp & Med Ctr* (*On Reconsideration*), 275 Mich App 290, 294; 739 NW2d 392 (2007), and causation, *Dean v Tucker*, 205 Mich App 547, 550; 517 NW2d 835 (1994). The party offering the testimony of an expert witness must also show the witness's knowledge of the applicable standard of care. *Decker v Rochowiak*, 287 Mich App 666, 685; 791 NW2d 507 (2010). But the weight given to expert testimony is an issue for the jury. *Guerrero v Smith*, 280 Mich App 647, 669; 761 NW2d 723 (2008).

To sustain a claim, a plaintiff must prove both cause in fact and legal or proximate causation. *Weymers v Khera*, 454 Mich 639, 647; 563 NW2d 647 (1997).

The cause in fact element generally requires showing that "but for" the defendant's actions, the plaintiff's injury would not have occurred. On the other hand, legal cause or "proximate cause" normally involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences. [*Craig*, 471 Mich at 86-87 (citation omitted).]

A proximate cause is that "which in a natural and continuous sequence, unbroken by any new, independent cause, produces the injury." *McMillian v Vliet*, 422 Mich 570, 576; 374 NW2d 679 (1985) (quotation marks and citation omitted). There can be more than one proximate cause. *O'Neal v St John Hosp & Med Ctr*, 487 Mich 485, 496-497; 791 NW2d 853 (2010). Further, when the negligence of multiple actors contributes to a single injury, one actor's negligence can be a proximate cause if it was a substantial factor in bringing about the injury. See *Brisboy v Fibreboard Corp*, 429 Mich 540, 547-548; 418 NW2d 650 (1988).

As discussed, the trial court found the opinions of Francke's experts objectionable because they "were not in accord with established facts." This issue arose in *Badalamenti v William Beaumont Hospital-Troy*, 237 Mich App 278, 281-282; 602 NW2d 854 (1999), in which the plaintiff, Salvatore Badalamenti, alleged that the defendant hospital and doctors caused his injury by failing to diagnose and treat his cardiogenic shock. The defendants argued that test results from Badalamenti's emergency room visit proved that he did not suffer cardiogenic shock, but that he instead experienced a rare, severe reaction to a medication. *Id*. at 282. Badalamenti's expert opined that the defendants breached the standard of care because he was skeptical of the defendants' test results showing normal heart function during Badalamenti's care. *Id*. at 286-289.

In its discussion of this testimony on appeal, this Court ruled that Badalamenti's expert "had no reasonable basis in evidence to support his opinion," *id.* at 288, and that the expert "specifically acknowledged that on the basis of the information in the record, a competent cardiologist might logically conclude that [Badalamenti] did not have cardiogenic shock," *id.* at 289. This Court ruled that Badalamenti's expert should not have been allowed to testify to that opinion:

> [A]n expert's opinion is objectionable where it is based on assumptions that are not in accord with established facts. This is true where an expert witness' testimony is inconsistent with the testimony of a witness who personally observed an event in question, and the expert is unable to reconcile his inconsistent testimony other than by disparaging the witness' power of observation. [*Id.* at 286.]

In *Estate of Taylor v Univ Physician Group*, 329 Mich App 268, 279-287; 941 NW2d 672 (2019), this Court considered the reasoning in *Badalamenti* under a different set of facts. Effie Taylor died from colorectal bleeding within days after one of the defendants, Dr. Manuel Sklar, performed her colonoscopy. *Id*. at 271. Sklar testified that, during the procedure, he biopsied suspected arteriovenous malformations (AVMs) in Taylor's colon. *Id*. When Taylor returned to the hospital with bleeding, a surgeon, Dr. Veslav Stecevic, performed an emergency colonoscopy. *Id*. Stecevic testified that the source of Taylor's bleeding was a ruptured diverticulum in the wall of her intestine and that there was no bleeding at Sklar's biopsy sites. Stecevic concluded that the bleeding was a chance event unrelated to Sklar's biopsies. *Id*. In contrast, the plaintiff's expert,

Dr. Todd Eisner, testified that Sklar negligently took a biopsy sample from an AVM knowing that Taylor was taking a blood thinner, and that this led to Taylor's fatal bleeding. *Id*. at 271, 272-273.

The defendants moved for summary disposition of Taylor's estate's medical malpractice claim, and argued that the trial court had to accept Stecevic's testimony as true. *Id*. at 271. On appeal of the trial court's denial of the defendant's motion, this Court distinguished the facts in *Taylor* from those in *Badalamenti*. *Taylor*, 329 Mich App at 279-287. Specifically, this Court observed that Badalamenti's expert stated an opinion that conflicted with the objective measurements in medical tests for cardiogenic shock but that, in *Taylor*, Eisner testified about his subjective opinion on the basis of Sklar's report that he biopsied Taylor's AVM. *Taylor*, 329 Mich App at 285.

This Court also distinguished *Badalamenti* because Badalamenti's expert lacked a "reasonable basis for calling into question" the defendants' theory of causation. *Id*. at 287. In contrast, Eisner's theory of causation drew upon facts in the record about what Sklar stated he did, it described a logical sequence of events, and it was based on "reasonable inferences from the evidence." *Id*. at 282, 287.

In this case, to show a breach of the standard of care, Francke presented expert testimony that defendants did not properly monitor, safeguard, and document Francke's positioning during surgery. Part of this claim of breach centers on the meaning of the word "supine" as a one-word description of plaintiff's position in the chart of her surgery. All four of Francke's experts, Tomas, Gupta, Perrotti, and Preston, testified that "supine" means being positioned on one's back, and does not include any indication of the position of Francke's arms. Tomas, Gupta, and Perrotti also testified that they understood that, in some cases, "supine" may suggest that the patient's arms were at her sides, or at least not abducted more than 90 degrees, but they did not testify that Francke's surgical chart was one of those cases.

Contrary to the trial court's reasoning, these expert opinions are not "based on assumptions that are not in accord with established facts." *Badalamenti,* 237 Mich App at 286. The only established facts related to their opinions are that the surgical chart included the word "supine" as a position description, and nothing else. The parties express a difference of opinion about what the use of the word "supine" indicates about Francke's position, and Francke's argument of a breach in the standard of care is predicated on this one-word descriptor showing insufficient attention to her positioning during surgery.

Francke's experts did not state opinions that conflict with objective measurement, *Taylor*, 329 Mich App at 285, but instead used their knowledge and experience to testify regarding the meaning of a medical term. Because the weight to be given to expert testimony is for the jury to decide, *Guerrero*, 280 Mich App at 669, the experts' testimony that they find the word "supine" too vague to satisfy defendants' duty in monitoring Francke's position is enough to establish a question of fact whether there was a breach of the standard of care.

The testimony of Francke's experts provide some support for the foreseeability of harm when positioning is not diligently monitored, and so is the basis for Francke's prima facie burden of proximate causation. See *Ray v Swager*, 501 Mich 52, 65; 903 NW2d 366 (2017); *Hickey*, 439 Mich at 438, 447. However, this testimony fails to establish but-for causation, *Weymers*, 454 Mich

at 647-648, because there is no evidence that defendants mispositioned Francke, only speculation, *Wiley*, 257 Mich App at 496. But, under the doctrine of res ipsa loquitur, a plaintiff is entitled to an inference of negligence from circumstantial evidence when they are otherwise unable to prove the actual occurrence of a negligent act. *Jones*, 428 Mich at 150. This doctrine applies in the following circumstances:

> (1) [T]he event must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff; and (4) evidence of the true explanation of the event must be more readily accessible to the defendant than to the plaintiff. [*Woodard v Custer*, 473 Mich 1, 7; 702 NW2d 522 (2005) (quotation marks and citation omitted).]

Our Supreme Court has recognized the application of the doctrine of res ipsa loquitur in medical malpractice cases. *Jones*, 428 Mich at 150-151. Whether the doctrine properly applies is a question of law. *Id*. at 154 n 8; see also *Pugno v Blue Harvest Farms, LLC*, 326 Mich App 1, 19; 930 NW2d 393 (2018).

In this case, the second and third elements of res ipsa loquitor are undisputed because Francke was unconscious and under defendants' control when the injury to her brachial plexus occurred, and she was unable to contribute to the injury. *Woodard*, 473 Mich at 7. To establish the first element, a bad result is insufficient, *Locke v Pachtman*, 446 Mich 216, 231; 521 NW2d 786 (1994); instead, it must be within the common understanding of the jury or established by expert testimony, *Woodard*, 473 Mich at 7. Even if expert testimony is in dispute regarding whether the injury ordinarily occurs in the absence of negligence, it is for the jury "to determine whether plaintiff has proven whether it is more likely than not that defendant's negligence caused plaintiff's injury." *Jones*, 428 Mich at 154-155.

Addressing the first condition, two of Francke's experts, Gupta and Perrotti, unequivocally testified that Francke's injury would not ordinarily occur in the absence of the negligence of a medical provider, and Gupta opined that he did not believe plaintiff's specific injury could ever occur without negligence by a medical provider. Francke's expert testimony also supported the contention that an injury similar to the one she sustained *can* occur in the absence of negligence, but the inquiry is not whether the injury *ever* occurs in the absence of negligence, but whether the injury *ordinarily* does not occur in the absence of negligence. *Woodard*, 473 Mich at 7.

Defendants took the position that the medical articles they produced showed that injuries like Francke's ordinarily occur in the absence of negligence. But, again, as our Supreme Court stated in *Jones*, even if the question is disputed, "the jury is to determine whether plaintiff has proven whether it is more likely than not that defendant's negligence caused plaintiff's injury." *Jones*, 428 Mich at 154-155.

The remaining condition of res ipsa loquitur is that "evidence of the true explanation of the event must be more readily accessible to the defendant than to the plaintiff." *Woodard*, 473 Mich at 7. The trial court ruled that Francke failed to present a triable issue of fact on this condition because Tomas, Gupta, and Perrotti "testified that this injury was caused from positioning

[Francke's] arms more than 90 degrees at her side." But the experts actually testified that, although the injury often occurs because of malpositioning, the deficiencies in charting made it impossible for them to know anything about the position of Francke's arms during the surgery. Gupta, Perrotti, and Preston further testified they could not identify the specific mechanism of the injury—stretch, or pressure; during transfer of Francke while she was fully sedated, or during the surgery—because they were not present during her operation. But, logically, Francke was unconscious and under defendants' control when the injury occurred so, as compared to defendants, she had no way to know the true explanation for her surgical injury. Accordingly, Francke satisfied the final requirement of the res ipsa loquitor doctrine because evidence of the true explanation of what occurred was more readily accessible to defendants than to Francke.

On the basis of the evidence submitted, Francke presented evidence to establish a genuine issue of material fact about whether defendants breached the standard of care and caused her injury under the doctrine of res ipsa loquitor.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Anica Letica
/s/ Kristina Robinson Garrett
/s/ Kathleen A. Feeney