# STATE OF MICHIGAN

# COURT OF APPEALS

CLAIRE GORDON,

        Plaintiff-Appellant/Cross-Appellee,

v

LISA M. FLYNN, M.D., ST. CLAIRE
SPECIALTY PHYSICIANS, P.C., ST. JOHN
HOSPITAL AND MEDICAL CENTER, and
STEPHEN P. SWISTAK, M.D.,

        Defendant-Appellees/Cross-
        Appellants.

UNPUBLISHED
June 23, 2015

No. 318705
Wayne Circuit Court
LC No. 11-003206-NH

Before: STEPHENS, P.J., and BORRELLO and GADOLA, JJ.

PER CURIAM.

In this medical malpractice action, plaintiff appeals as of right the trial court's order granting defendants' motions for reconsideration and summary disposition pursuant to MCR 2.116(C)(10). Defendants cross-appeal the same order arguing that the trial court erred in failing to grant summary disposition on additional grounds. For the reasons set forth in this opinion, we reverse and remand for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

On September 19, 2008, plaintiff underwent routine vein stripping surgery at St. John Hospital performed by Dr. Lisa Flynn, M.D. with assistance from first-year surgical resident Stephen P. Swistak, M.D. In the following weeks, Dr. Brian Mason, M.D., plaintiff's OBGYN, routinely visited plaintiff in her home to help her change dressings and assisted her with contacting Dr. Flynn regarding the problems plaintiff experienced following the surgery.

Plaintiff commenced this medical malpractice action alleging that defendants damaged the peroneal nerve in her left leg during the surgery. The peroneal nerve runs right next to the surface on the outside, or lateral, aspect of the knee. Plaintiff's theory of liability is premised upon the allegation that during the surgical procedure, she sustained permanent nerve damage when defendants improperly positioned her leg causing external pressure on the peroneal nerve. Because plaintiff cannot identify with direct evidence the exact act which resulted in the damage, she relies upon the doctrine of res ipsa loquitur. Plaintiff attached affidavits of merit from Dr.

-1-

Steven Okuhn, M.D., a board-certified vascular surgeon, Dr. Bharat M. Tolia, M.D., board certified in neurology, and Julie Rittenhouse, R.N., in support of her theory.

Defendants did not dispute the fact that plaintiff has sustained an injury to her peroneal nerve. Instead, defendants argued that plaintiff could not prove that the injury occurred during the course of the surgery. Defendants claimed that all experts agreed that when a peroneal nerve has been damaged, symptoms, specifically "drop foot," are evident within days of the injury. Defendants argued that because there was no evidence that plaintiff experienced drop foot shortly after the procedure, she cannot establish that the injury occurred during the course of the vein stripping surgery. Plaintiff contested defendants' assertions and further argued that there was overwhelming evidence that she exhibited symptoms of diminished motor control immediately after the surgery.

Defendants moved for summary disposition arguing, pursuant to MCR 2.116(C)(10), that plaintiff could not establish that defendants' breached the requisite standard of care, proximately caused the alleged harm, or were otherwise liable under the theory of res ipsa loquitur. In a February 25, 2013, order, the trial court denied the motions, holding,

> Dr. Okuhn testified that this type of injury does not occur absent malpractice on the part of the medical professionals present during the procedure. He stated it is the job of the physicians and nurses to ensure that the patient does not suffer nerve damage as a result of positioning or pressure during the procedure. This testimony would support res ipsa lo quitor [sic], under [*Jones v Porretta*, 428 Mich 132; 405 NW2d 863 (1987).]

> * * *

> Dr. Tolia has presented causation testimony regarding the injury. He stated plaintiff's peroneal nerve injury was related to the positioning and compression of her left knee area during surgery. This testimony, if believed would be consistent with [Dr. J. Matthew Voci's] earlier 12-21-2011 opinions. There are material questions of fact. In terms of when the plaintiff developed the adverse symptoms the testimony of Dr. Mason creates another factual dispute.

On March 26, 2013, defendants' motions for reconsideration were considered and denied by the trial court and this Court denied defendants' applications for leave to appeal the order.[1]

Meanwhile, the parties submitted numerous motions in limine. At a hearing on September 30, 2013, the trial court stated, "I was concerned that perhaps the denial of the motion for reconsideration should be reconsidered." Following additional oral arguments, the trial court granted summary disposition in favor of defendants, explaining:

---

[1] *Gordon v Flynn*, unpublished order of the Court of Appeals, entered August 28, 2013 (Docket Nos. 315739, 315743).

In order to apply res ipsa, the injury must be of a kind that ordinarily does not occur in the absence of negligence. Here the injury to plaintiff's peroneal nerve resulting in foot drop, factually this means that plaintiff's injury must have occurred in the surgical procedure for the doctrine to apply.

This court finds on reconsideration the res ipsa doctrine cannot apply here because we lack credible evidence that the injury occurred during the procedure.

Dr. Tolia testified that the injury would have to be manifested as foot drop and it would be noted within a few days of an injury.

He testified that the injury could possibly manifest itself later but he had not seen this documented in any literature.

Reviewing the record, this court finds that the plaintiff has not established that the foot drop occurred within the necessary timeframe.

During the January 3 deposition of Ms. Gordon, she testified that she experienced both loss of sensation and motor weakness in her left foot shortly after surgery. This testimony is contrary to her original deposition testimony and the rest of the factual record.

Ms. Gordon acknowledged no complaint of motor weakness in her initial deposition on September 13, 2011 reciting that she had complained of left foot numbness and inflamed, blistered and painful legs at the incision site.

* * *

Considering the timing, plaintiff may not res ipsa. Without it, plaintiff has failed to show beyond speculation that the surgical procedure caused the plaintiff's damages.

On appeal, plaintiff contends that the trial court erred in granting defendants' motions for summary disposition after it initially found that there were questions of fact for trial. Defendants Dr. Flynn and St. Claire Specialty Physicians, PC, (St. Claire) and defendants St. John Hospital (St. John) and Dr. Swistak each cross-appeal, essentially arguing that there were additional grounds for summary disposition because res ipsa loquitur does not apply in this case.

## II. STANDARD OF REVIEW

We review de novo a trial court's ruling on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). "In reviewing a motion brought under MCR 2.116(C)(10), we review the evidence submitted by the parties in a light most favorable to the nonmoving party to determine whether there is a genuine issue regarding any material fact." *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 271; 826 NW2d 519 (2012). "A genuine issue of material fact exists when the record leaves open an issue on which reasonable minds could differ." *Bennett v Detroit Police Chief*, 274 Mich App 307, 317; 732 NW2d 164 (2006). If there are no genuine issues of material fact, the moving party is entitled to judgment

as a matter of law. MCR 2.116(C)(10). This Court reviews de novo whether the doctrine of res ipsa loquitur applies in a particular case. *Jones v Poretta*, 428 Mich 132, 154, n 8; 450 NW2d 863 (1987).

## III. GOVERNING LAW

In a medical malpractice action, the plaintiff bears the burden of proving: "(1) the applicable standard of care, (2) breach of that standard by defendant, (3) injury, and (4) proximate causation between the alleged breach and the injury." *Cox v Flint Bd of Hosp Managers*, 467 Mich 1, 10; 651 NW2d 356 (2002).

The doctrine of res ipsa loquitur enables a plaintiff to establish a permissible inference of negligence from circumstantial evidence. *Jones*, 428 Mich at 150. "The major purpose of the doctrine of res ipsa loquitur is to create at least an inference of negligence when the plaintiff is unable to prove the actual occurrence of a negligent act." *Id.* In *Jones*, our Supreme Court reviewed the history of the res ipsa loquitur rule and formally "acknowledge[d] the Michigan version of res ipsa loquitur which entitles a plaintiff to a permissible inference of negligence from circumstantial evidence." *Id.* The Court stated:

> The major purpose of the doctrine of res ipsa loquitur is to create at least an inference of negligence when the plaintiff is unable to prove the actual occurrence of a negligent act . . . [T]o avail themselves of the doctrine, plaintiffs in their cases in chief must meet the following conditions:
>
> > (1) the event must be of a kind which ordinarily does not occur in the absence of someone's negligence;
> >
> > (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant;
> >
> > (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff. [*Jones*, 428 Mich at 150-151.]

The fourth criterion is that "[e]vidence of the true explanation of the event must be more readily accessible to the defendant than to the plaintiff." *Id.* at 151, quoting *Wilson v Stilwill*, 411 Mich 587, 607; 309 NW2d 898 (1981). In a medical malpractice action, expert testimony is required to prove that the injury complained of does not ordinarily occur in the absence of negligence, unless the inference is within common understanding. *Woodard v Custer*, 473 Mich 1, 7; 702 NW2d 522 (2005).

## IV. ANALYSIS

In this case, there was testimony presented by plaintiff and defendants that supported their respective positions. Viewing this evidence in a light most favorable to plaintiff, we conclude that there were questions on which reasonable minds could have differed and therefore summary disposition was not warranted.

-4-

Plaintiff presented the testimony of several physicians in support of her theory. In particular, Dr. Tolia, a board-certified neurologist, testified as an expert that in his medical opinion, plaintiff suffered her nerve injury during Dr. Flynn's surgery. Dr. Tolia explained that the injury was caused by some type of compression at or near the injury site of the peroneal nerve. Dr. Tolia explained that symptoms of this injury included pain, numbness of the leg or on the top of the foot, weakness in the muscles that elevate the foot and difficulty turning the foot inside. Dr. Tolia testified the injury would cause motor weakness within "a few days" and this type of weakness would prevent someone from "dorsiflexing"—i.e. would cause "foot drop." Dr. Tolia explained that the injury would cause someone to have difficulty walking and would cause tripping. Although Dr. Tolia agreed that plaintiff's medical records did not indicate that plaintiff had weakness in her foot until December 2008, he noted that Dr. Mason testified that plaintiff complained of weakness within days of the surgery which supported that plaintiff suffered a peroneal nerve injury during the surgery.

Plaintiff also proffered the expert testimony of Dr. Okuhn, who testified that plaintiff's injury would not have occurred during the surgery absent malpractice. Dr. Okuhn testified that "common sense would indicate that the injury occurred at the time of the operation." Dr. Okuhn agreed that his opinion testimony was based on Dr. Tolia's affidavit wherein Dr. Tolia averred that the injury occurred as a result of a pressure injury during the surgery.

In addition, Dr. Mason submitted an affidavit wherein he averred that plaintiff contacted him on September 22, 2008, and complained "about numbness and difficulty standing on her left foot and leg." Dr. Mason stated that during the week after the surgery, plaintiff "continued to complain of numbness on the top of her left foot and was unable to ambulate or be stable enough to hold her ten month old twins due to the weakness in her left foot and leg." Dr. Mason stated, "I was treating [plaintiff] on a daily basis in this time frame" and averred that "I can verify with absolute certainty that on 9-24-08 [plaintiff] was making complaints about her left leg motor deficits. . . ." Dr. Mason stated that he accompanied plaintiff to a post-operative office visit with Dr. Flynn wherein plaintiff's "post operative left foot numbness, difficulties ambulating, left leg motor deficits. . ." were discussed with Dr. Flynn, but Dr. Flynn "was primarily concerned with the skin rash condition . . . and dismissed the complaints of numbness and ambulation. . . ." Dr. Mason averred as follows:

> That I had either treated or been in phone contact with Claire Gordon on a regular basis from 9-22-08 to 10-29-08 concerning her left lower extremity condition and I am in agreement with the history elicited by the technician that Claire had been suffering from pain, edema and numbness for the entire five weeks since her vein stripping procedure. In addition to those complaints she also was experiencing motor difficulties throughout this five week period of time that manifested itself in difficulty ambulating on the left leg, difficulty utilizing stairways, and being unstable on her feet so as to not be able to lift and carry her infant twins all of which I personally observed.

* * *

> I note in reviewing the records of internist, Dr. Keith Hoffman, that he diagnosed Claire with a left foot drop on December 16, 2008 based upon his

observation and examination of her left lower extremity and *I am in agreement that Claire had been suffering with foot drop like symptoms since immediately following the vein stripping procedure.* [Emphasis added.]

Dr. Mason also testified at a deposition wherein he offered testimony that was similar to his affidavit. Dr. Mason's affidavit and testimony supported plaintiff's theory that she sustained an injury to her peroneal nerve during the surgery. Dr. Tolia's testimony coupled with Dr. Mason's medical observations during the days following the surgery supported that plaintiff's symptoms were symptomatic of a peroneal nerve injury. Dr. Mason's proffered testimony formed a factual basis for Dr. Tolia's causation theory—i.e. that plaintiff sustained the injury during the surgery.

Defendants contend that Dr. Tolia's testimony was not supported by fact because plaintiff testified at a deposition that she did not experience weakness in her left foot until January or February 2009 when she treated with a neurologist. Specifically, plaintiff testified as follows:

*Q.* Now, at this time, and I'm referring to the first time that you say Dr. Scripathi and Dr. Schwalb [January/February 2009], you could still lift your foot, what's referred to as dorsiflexion?

*A.* No. I was beginning to have trouble with that and my foot was beginning to turn.

*Q.* Okay. And this was a relatively new development around the time that you initially saw Dr. Scripathi and Dr. Schwalb?

*A.* Yes.

Defendants contend that this conclusively shows that plaintiff was not experiencing foot-drop until months after the surgery, which shows that the nerve injury could not have occurred during the surgery. However, plaintiff consistently testified in her depositions that she had complaints within days of the surgery—symptoms that Dr. Tolia explained would have been present following a nerve injury. Indeed, plaintiff contacted Flynn's office within days complaining of swelling, stiffness and pain.[2] While she described her complaint as being one of numbness in the foot, a reasonable juror could conclude this was a layman's description of lack of motor control and Dr. Tolia testified that a nerve injury would have caused numbness in the foot. This is supported by plaintiff's testimony regarding a fall on the stairs that occurred two months after the surgery. When asked how the fall occurred, plaintiff explained that she thought she had raised her foot up, but had not actually done so because it was numb. This testimony suggests that what plaintiff describes as "numb" could very well be lack of or reduced motor control. Thus, defendants' argument regarding plaintiff's initial deposition testimony that she

---

[2] Flynn's records state that the complaints were regarding the right leg; however, plaintiff claims, and Dr. Mason averred, that plaintiff reported problems in the left leg and Flynn's records are simply inaccurate.

felt numbness in her foot within days of the surgery as opposed to weakness is not dispositive as to whether plaintiff exhibited symptoms indicative of a peroneal nerve injury. Moreover, to the extent that plaintiff offered conflicting testimony during her depositions this went to her credibility and a trial court is not permitted to assess witness credibility in deciding a motion for summary disposition. *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013).

Furthermore, as noted above, the testimony and affidavit of Dr. Mason supported plaintiff's position that she experienced the onset of loss of motor control within a few days of the surgery. As noted above, Dr. Mason saw plaintiff as a courtesy when Dr. Flynn did not return plaintiff's calls immediately following the surgical procedure. He first saw plaintiff sometime between September 22, 2008 and September 24, 2008, approximately three days post-surgery. According to Dr. Mason, plaintiff consistently complained of numbness *and weakness* in her left foot and leg. Dr. Mason attended plaintiff's October 8, 2008, appointment with Dr. Flynn because he was concerned about his patient and Dr. Flynn's failure to return his and plaintiff's telephone calls. Dr. Mason confirmed that during this visit, plaintiff's left leg motor deficits were discussed with Dr. Flynn. In short, plaintiff proffered evidence that supported Dr. Tolia's opinion testimony that the injury occurred during the surgery.

Defendants repeatedly cite Dr. Voci's second deposition testimony in support of their argument that plaintiff did not sustain the injury during surgery. At his initial deposition Dr. Voci offered testimony favorable to plaintiff; however, at a subsequent deposition, Dr. Voci reversed course and stated that his prior testimony was incorrect because he failed to review some of plaintiff's medical records. Dr. Voci then testified that he could not link plaintiff's injury to the surgery. Dr. Voci's conflicting testimony involved an issue of credibility and it does not support defendants' argument that summary disposition was warranted. See *Pioneer State Mut Ins Co*, 301 Mich App at 377.

Defendants argue that summary disposition was warranted because plaintiff cannot establish the elements of res ipsa loquitur.[3]

As noted, to invoke the doctrine of res ipsa loquitur, a plaintiff must show that (1) the event was of a kind that ordinarily does not occur in the absence of negligence; (2) that it was caused by an agency or instrumentality within the exclusive control of the defendant; (3) that it was not due to any voluntary action of the plaintiff; and (4) that the evidence of the true explanation of the event was more readily accessible to the defendant than to the plaintiff. *Woodard*, 473 Mich at 6-7. In *Jones*, 428 Mich at 132, a case in which the plaintiff alleged injury to his brachial plexus in a manner similar to that alleged by the plaintiff in this case, our Supreme Court stated in no uncertain terms that the doctrine has long been accepted in this jurisdiction. The Court further explained that the purpose of the doctrine was to create "at least

---

[3] Defendants present these arguments in their response briefs to plaintiff's appeal, and in their briefs on cross-appeal.

an inference of negligence when plaintiff is unable to prove the actual occurrence of a negligent act." *Id.* at 150.

In this case, there was evidence to support application of the res ipsa loquitur doctrine. There was evidence that the event was of a kind that ordinarily does not occur in the absence of negligence. *Woodard*, 473 Mich at 6-7. Specifically, as noted, plaintiff's expert, Dr. Okuhn, testified that the type of injury suffered by plaintiff is of the type that "does not occur absent malpractice on the part of the medical professional present during the procedure." Defendants take issue with this opinion arguing that it is based on a faulty premise, i.e., that plaintiff was injured during the surgical procedure. Defendants then reason that if the opinion of plaintiff's experts is factually and fatally flawed, plaintiff cannot invoke the res ipsa loquitur doctrine. Defendants' arguments do not render the doctrine inapplicable, but simply support that questions of fact remain for the jury. As noted above, plaintiff proffered expert testimony to support her theory and that testimony was grounded in fact where plaintiff and Dr. Mason testified concerning the symptoms plaintiff experienced immediately after surgery.

There was evidence that plaintiff's injury was caused by an agency or instrumentality within the exclusive control of defendants. *Id*. In this case, plaintiff has identified an instrumentality—i.e. a compression injury of the nerve that may have caused her injury. Plaintiff's proffered expert testimony supported that the injury was caused by an agency or instrumentality within the exclusive control of defendants. The evidence was sufficient to invoke the doctrine of res ipsa loquitur. That there may be multiple suspected instruments within defendants' control does not preclude application of the doctrine.

Finally, there was no evidence that plaintiff's injury was due to a voluntary action on her part where plaintiff proffered expert testimony that the injury occurred during the surgery and the evidence of the true explanation of the event was more readily accessible to defendants than to plaintiff. *Id*. Specifically, plaintiff proffered evidence that the injury occurred during surgery where Dr. Flynn and Dr. Swistak had full access and control over the operation and had access to the records concerning the surgery.

Next, defendants argue that because there are multiple defendants and because the injury can be caused by multiple instrumentalities, plaintiff cannot show that her injury was caused by an agency or instrumentality within the exclusive control of defendants. However, in the context of medical malpractice and, specifically, surgical teams, it is not necessary to show that any one defendant had exclusive control over any particular instrumentality. In *Hand v Park Community Hospital*, 14 Mich App 371; 165 NW2d 673 (1969)[4], this Court, citing to the seminal res ipsa loquitur case of *Ybarra v Spangard*, 25 Cal 2d 486; 154 P2d 687, 691 (1945), stated:

---

[4]"Although cases decided before November 1, 1990, are not binding precedent, MCR 7.215(J)(1), they nevertheless can be considered persuasive authority." *In re Stillwell Trust*, 299 Mich App 289, 299; 829 NW2d 353 (2012).

Where a plaintiff receives unusual injuries while unconscious and in the course of medical treatment, all those defendants who had any control over his body or the instrumentalities which might have caused the injuries may properly be called upon to meet the inference of negligence by giving an explanation of their conduct.

In *Ybarra*, the court noted that the number of defendants alone does not determine whether the doctrine of res ipsa loquitur applies because: "Every defendant in whose custody the plaintiff was placed for any period was bound to exercise ordinary care to see that no unnecessary harm came to him and each would be liable for failure in this regard." *Ybarra*, 154 P2d at 690. Thus, that plaintiff cannot identify the exact defendant responsible for the placement of plaintiff's legs during her surgery is not fatal to her theory of liability under the doctrine of res ipsa loquitur.

With respect to the instrumentality that caused the injury, in *Ybarra*, the court noted: The other aspect of the case which defendants so strongly emphasize is that plaintiff has not identified the instrumentality any more than he has the particular guilty defendant. Here again, there is a misconception which, if carried to the extreme for which defendants contend, would unreasonably limit the application of the res ipsa loquitur rule. It should be enough that plaintiff can show an injury resulting from an external force applied while he lay unconscious in the hospital; this is a clear a case of identification of the instrumentality as plaintiff may ever be able to make. [*Ybarra*, 154 P2d at 690-691.]

In this case, plaintiff has identified an instrumentality—i.e. a compression-type injury of the nerve that may have caused her injury. Such evidence is sufficient to invoke the doctrine of res ipsa loquitur. That there may be multiple suspected instruments within defendants' control does not preclude the application of the doctrine.

In short, plaintiff presented evidence that she sustained an injury to her peroneal nerve during the surgical procedure and that this type of injury does not ordinarily occur in the absence of negligence. While defendants dispute that plaintiff sustained injury during the surgery, this does not preclude invocation of the res ipsa loquitur doctrine. It simply establishes that plaintiff is entitled to have her case submitted to the trier of fact. In *Jones*, the Court stated that "if there is such evidence, even if it is disputed, or if such a determination could be made as a matter of common understanding, the jury is to determine whether plaintiff has proven whether it is more likely than not that defendant's negligence caused plaintiff's injury." *Jones*, 428 Mich at 154-155.

Finally, defendants St. John and Dr. Swistak present the following question: "whether summary disposition is appropriate when plaintiff responds only with opinion testimony, or evidence generally, which is contradicted, impermissibly altered, and otherwise inadmissible under governing Michigan law?" The crux of this issue appears to concern whether Dr. Tolia proffered admissible testimony. Defendants appear to contend that Dr. Tolia's testimony was not based on facts. However, as discussed above, testimony of Dr. Mason and plaintiff supported Dr. Tolia's causation testimony. To the extent that defendants cite inconsistencies in

Dr. Tolia's or any of the other witnesses' testimony, such inconsistencies concern credibility, which involves an issue for the trier of fact.

In sum, the trial court erred in granting defendants' motions for summary disposition where there were genuine issues of material fact and where there was evidence to support application of the doctrine of res ipsa loquitur.

Reversed and remanded for further proceedings consistent with this opinion. Plaintiff having prevailed, may tax costs. MCR 7.219(A). We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Stephen L. Borrello
/s/ Michael F. Gadola