# STATE OF MICHIGAN

# COURT OF APPEALS

NICOLE STASSER,

Plaintiff-Appellee,

v

PAUL W. CLANCY, D.D.S.,

Defendant-Appellant.

UNPUBLISHED
February 23, 2017

No. 329002
Wayne Circuit Court
LC No. 13-004811-NH

Before: JANSEN, P.J., and BECKERING and GADOLA, JJ.

PER CURIAM.

In this dental malpractice action, defendant appeals as of right the trial court's order entering judgment on the jury's verdict in favor of plaintiff in the amount of $151,093.23. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND FACTS

On August 18, 2011, defendant extracted one of plaintiff's wisdom teeth. From the time of the extraction, plaintiff experienced numbness on the left side of her tongue. When she returned to defendant's office, he treated her for a dry socket and advised her that her lingual nerve may have been injured during the procedure, but that it would gradually recover. When the numbness continued, plaintiff saw various other dental professionals, who also advised her that she most likely had a lingual nerve injury that would recover. Eventually, plaintiff was referred to Dr. Joseph Helman, an oral surgeon and lingual nerve specialist at the University of Michigan. On January 30, 2012, Helman performed exploratory surgery on plaintiff. Helman testified that he found that plaintiff's left lingual nerve was severed and was irreparable. Thereafter, plaintiff brought this dental malpractice claim against defendant. At trial, defendant argued that plaintiff's numbness most likely was caused by toxicity from the anesthetic he used, and that it was more likely than not that Helman severed plaintiff's lingual nerve during the exploratory surgery. The jury returned a verdict in favor of plaintiff.

## II. MOTIONS FOR A DIRECTED VERDICT AND FOR JUDGMENT NOTWITHSTANDING THE VERDICT

On appeal, defendant argues that the trial court should have granted his motions for a directed verdict or for judgment notwithstanding the verdict (JNOV) for several reasons. Defendant first argues that plaintiff failed to establish a claim of dental malpractice because

-1-

plaintiff's expert witness, Dr. Paul Sikorski, failed to set forth the standard of care and failed to specify any flawed technique or inappropriate instrumentality used by defendant that violated the standard of care. Defendant next argues that the trial court erred by denying his motions because plaintiff failed to prove by a preponderance of the evidence that her injuries were proximately caused by defendant's negligence. We disagree on both grounds.

We review de novo a trial court's decision regarding both a motion for a directed verdict and a motion for JNOV. *Sniecinski v Blue Cross & Blue Shield of Mich*, 469 Mich 124, 131; 666 NW2d 186 (2003). When reviewing a trial court's decisions on such motions, we view the evidence and all legitimate inferences in the light most favorable to the nonmoving party. *Id.* "A motion for directed verdict or JNOV should be granted only if the evidence viewed in this light fails to establish a claim as a matter of law." *Id.*

To establish a cause of action for medical malpractice, a plaintiff must demonstrate four elements: (1) the standard of care governing the defendant's conduct at the time of the alleged negligence, (2) that the defendant breached the applicable standard of care, (3) that the plaintiff was injured, and (4) that the plaintiff's injury was proximately caused by the defendant's breach of the standard of care. *Craig v Oakwood Hosp*, 471 Mich 67, 86; 684 NW2d 296 (2004); see also MCL 600.2912a(1). "To survive a motion for a directed verdict, the plaintiff must make a prima facie showing regarding each of the above elements." *Locke v Pachtman*, 446 Mich 216, 222; 521 NW2d 786 (1994).

"In an action alleging medical malpractice, the plaintiff has the burden of proving that he or she suffered an injury that more probably than not was proximately caused by the negligence of the defendant or defendants." MCL 600.2912a(2). In order to establish causation in a medical malpractice action, the negligent conduct must have been both the legal cause and the cause-in-fact of a plaintiff's injury. *O'Neal v St John Hosp & Med Ctr*, 487 Mich 485, 496; 791 NW2d 853 (2010). "While legal causation relates to the foreseeability of the consequences of the defendant's conduct, the cause-in-fact prong 'generally requires showing that "but for" the defendant's actions, the plaintiff's injury would not have occurred.' " *Id*., quoting *Skinner v Square D Co*, 445 Mich 153, 163; 516 NW2d 475 (1994).[1] When presenting circumstantial evidence of causation, "the plaintiff must present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred." *Skinner*, 445 Mich at 164-165.

Regarding breach and the standard of care, at trial, Sikorski testified that severing the lingual nerve during a tooth extraction violated the standard of care, regardless of the type of instrument used to sever the nerve, assuming the nerve was in its normal anatomical position. Defendant and his expert witness, Dr. Dennis Webb, also agreed at trial that if defendant severed plaintiff's lingual nerve during the extraction and the nerve was located in the normal anatomical position, such conduct would violate the standard of care. Accordingly, defendant's claim that plaintiff failed to set forth the applicable standard of care lacks merit. In order to demonstrate a

---

[1] *Skinner* was overruled in part on other grounds by *Smith v Globe Life Ins Co*, 460 Mich 446, 455 n 2 (1999).

breach of this standard of care, plaintiff was required to show that her lingual nerve was located in the normal anatomical position and that defendant severed the nerve during her wisdom tooth extraction. Contrary to defendant's assertions on appeal, demonstrating a violation of the established standard of care, i.e., severing a normally located lingual nerve during a wisdom tooth extraction, was not dependent on what tool or method was used to make the cut. Therefore, plaintiff was not required to present evidence showing that defendant used a specific flawed technique or improper instrumentality to nonetheless demonstrate that he breached the standard of care, and the trial court did not err by denying defendant's motions on this basis.

Regarding causation, as already discussed, given the undisputed testimony concerning the standard of care, plaintiff's failure to show that defendant used a particular improper technique or instrumentality during the extraction was not fatal to her case. Further, evidence that the lingual nerve could be cut in the absence of malpractice was not fatal to plaintiff's claim. Both Sikorski and Webb agreed that it was not malpractice to sever the lingual nerve if the nerve was located in an abnormal anatomical position. However, they both further agreed that Helman's testimony, which indicated that the distal end of plaintiff's nerve was found in the normal anatomical position, made it more likely than not that the proximal portion of the nerve at the point where it was severed also would have been located in the normal anatomical position.[2] Considering the record evidence, we conclude that there was substantial evidence from which the

---

[2] Specifically, Sikorksi testified as follows:

> *Q*. Do you have an opinion based upon the fact that the distal nerve at the point it was severed was in the correct location as to the more probable location of the proximal aspect of the nerve?
>
> *A*. Yes. I would believe it would be in the correct anatomical place, yes.

Likewise, Webb testified as follows:

> *Q*. Is it more probable than not that the proximal that hooked on to it at the exact point that it was severed was in the same area as the distal?
>
> *A*. At the exact point, yes.
>
> *Q*. That's where it was severed, correct?
>
> *A*. Correct.
>
> *Q*. At the point it was severed, it was in the anatomical location where you would expect to find the lingual nerve?
>
> *A*. Yes.

jury could conclude that more likely than not, but for defendant's conduct, plaintiff's injury would not have occurred. See *Skinner*, 445 Mich at 164-165. We, therefore, find no error in the trial court's denial of defendant's motions for a directed verdict and JNOV.

### III. RES IPSA LOQUITUR

Defendant next argues that the trial court erred by allowing plaintiff to rely on the doctrine of res ipsa loquitur at trial because plaintiff failed to plead the doctrine in her complaint and, further, failed to satisfy the required elements of the doctrine. We disagree. The question of whether the doctrine of res ipsa loquitur applies to a case is a question of law. *Jones v Porretta*, 428 Mich 132, 154 n 8; 405 NW2d 863 (1987). We review questions of law de novo. *Meredith Corp v Flint*, 256 Mich App 703, 711; 671 NW2d 101 (2003).

"The major purpose of the doctrine of res ipsa loquitur is to create at least an inference of negligence when the plaintiff is unable to prove the actual occurrence of a negligent act." *Jones*, 428 Mich at 150. The doctrine may be applied to a plaintiff's case only if (1) the event was of a kind that ordinarily does not occur in the absence of negligence, (2) the event was caused by an agency or instrumentality within the exclusive control of the defendant, (3) the event was not due to any voluntary action or contribution on the part of the plaintiff, and (4) the evidence of the true explanation of the event is more readily accessible to the defendant than to the plaintiff. *Id.* at 150-151.

As plaintiff argues, the doctrine of res ipsa loquitur is not applicable to this case. The parties do not dispute that plaintiff's lingual nerve was severed, and there was expert testimony that severing the lingual nerve during an extraction violated the standard of care, assuming the nerve was located in its normal anatomical position. Plaintiff presented evidence that it was more likely than not that her lingual nerve was in the correct anatomical position and that it was defendant, rather than Helman, who severed the nerve. Plaintiff was not unable to prove that a negligent act occurred and, therefore, did not need to rely on the doctrine of res ipsa loquitur at trial. See *Jones*, 428 Mich at 150. Although defendant argues that the trial court erred by allowing plaintiff to make a belated res ipsa loquitur argument, the trial court expressly noted that res ipsa loquitur did not apply to this case when it denied defendant's motions for a directed verdict and for JNOV. Further, the court did not instruct the jury on the doctrine of res ipsa loquitur, so the jury did not rely on that theory to return its verdict in plaintiff's favor. Accordingly, defendant has shown no error with respect to this issue.

### IV. MOTION FOR A NEW TRIAL

Finally, defendant argues that the trial court erred by denying his motion for a new trial on the ground that the verdict was against the great weight of the evidence. We disagree. A trial court's decision regarding whether to grant a new trial is reviewed for an abuse of discretion. *Wiley v Henry Ford Cottage Hosp*, 257 Mich App 488, 498; 668 NW2d 402 (2003). A new trial should be granted on the basis that the verdict is against the great weight of the evidence "only when it is manifestly against the clear weight of the evidence." *Id.* "The jury's verdict should not be set aside if there is competent evidence to support it." *Id.* "The issue usually involves matters of credibility or circumstantial evidence, but if there is conflicting evidence, the question of credibility ordinarily should be left for the fact-finder. Similarly, the weight to be given to

expert testimony is for the jury to decide." *Dawe v Bar–Levav & Assoc, PC (On Remand)*, 289 Mich App 380, 401; 808 NW2d 240 (2010) (footnotes omitted).

It was undisputed at trial that plaintiff's lingual nerve was severed and that plaintiff experienced numbness in the left side of her tongue since the time defendant performed the extraction. Sikorski, Webb, and defendant all agreed that severing the lingual nerve during an extraction violated the standard of care if the nerve was located in its normal anatomical position. Sikorski and Webb testified that they believed it was more probable than not that plaintiff's lingual nerve was located in the normal anatomical position. Although defendant presented evidence suggesting that it was Helman who severed the nerve during the exploratory surgery and that plaintiff's numbness could have been caused by the anesthesia injection, he has not shown that the verdict was "manifestly against the clear weight of the evidence." *Wiley*, 257 Mich App at 498. We, therefore, conclude that the trial court did not abuse its discretion by denying defendant's motion for a new trial.

Affirmed.

/s/ Kathleen Jansen
/s/ Jane M. Beckering
/s/ Michael F. Gadola