# STATE OF MICHIGAN

# COURT OF APPEALS

EDIE TAYLOR,

       Plaintiff-Appellant,

UNPUBLISHED
February 3, 2015

v

KAREN MCCARTHY, CRNA, ANESTHESIA
STAFFING CONSULTANTS, INC.,
MACKINAW SURGERY CENTER, L.L.C., and
NUETERRA HEALTHCARE MANAGEMENT,
L.L.C.,

       Defendants-Appellees,
and

COVENANT MEDICAL CENTER, INC. d/b/a
COVENANT HEALTHCARE-MACKINAW,

       Defendant.

No.  317766
Saginaw Circuit Court
LC No.  11-014069-NH

Before:  O'CONNELL, P.J., and BORRELLO and GLEICHER, JJ.

PER CURIAM.

Plaintiff Edie Taylor underwent surgery for hemorrhoids.  The operation itself was uneventful.  But at its outset, defendant Karen McCarthy, CRNA, the nurse anesthetist responsible for Taylor's anesthesia, encountered difficulty intubating Taylor.  With the assistance of an anesthesiologist, McCarthy successfully placed the endotracheal tube.

Three weeks after the surgery, a CT scan revealed a small fracture of Taylor's right mandible.  Taylor filed this lawsuit, alleging that a negligently performed intubation caused the fracture and other jaw-related problems.

-1-

The trial court granted defendants' motion for summary disposition, ruling that Taylor lacked expert testimony substantiating that the intubation caused her claimed injuries. We affirm.[1]

## I. BACKGROUND FACTS AND PROCEEDINGS

Taylor's out-patient hemorrhoid surgery was performed on September 28, 2009. McCarthy recounted at her deposition that her initial attempt to intubate Taylor failed because she was unable to fully visualize Taylor's vocal cords. With assistance from the attending anesthesiologist, Dr. Craig Bonhoff, McCarthy repositioned Taylor's head while Dr. Bonhofff applied cricoid pressure. These maneuvers brought Taylor's vocal cords into better view. McCarthy then bent the endotracheal tube into a "hockey stick" configuration, which allowed her to pass it into Taylor's trachea. During the surgery, McCarthy noted blood in the endotracheal tube. After she extubated Taylor, McCarthy observed blood in Taylor's suctioned secretions.

Taylor testified that when she awoke from the anesthesia, her mouth was "sore and painful" and felt worse than her rectum. At home, she had difficulty eating and opening and closing her mouth. Taylor could see abnormal areas inside of her mouth she described as "scrapings."

On October 8, 10 days after the operation, Taylor's general surgeon performed a routine postsurgical checkup. Taylor told him of her mouth pain. The surgeon's note states: "She did sustain some perioral lacerations. Examination of the oral cavity today does not reveal any large abscess. There are some small scrapings internally."

On October 13, Taylor went to an emergency room complaining of jaw pain. The emergency room record provides: "had surgery in sept and ever since has had pain in mouth, states something 'poked her mouth when she was put under' now jaw hurts and has headache[.]" A physician's note indicates: "in the right lower jaw she has a wisdom tooth that is coming and irregular. . . . I do not believe this problem is related to endotracheal intubation. [I] believe this is a dental problem."

On October 15, Taylor visited a dentist who diagnosed her problem as a "canker sore," but the next day determined that alveolar bone was exposed in an area near her tongue.[2] Taylor then consulted an oral surgeon, Dr. Reynold J. Baumstark. Dr. Baumstark confirmed the presence of exposed bone in her right mandible, near a wisdom tooth. The wisdom tooth was impacted and infected, and Dr. Baumstark recommended its removal.

---

[1] Taylor raises a second appellate issue as well: whether the trial court correctly granted summary disposition on agency grounds to Mackinaw Surgery Center and Nueterra Healthcare Management, LLC. Given our resolution of the proximate cause question, we need not consider this issue.

[2] Alveolar bone is the "thin layer of bone . . . surrounding and containing the teeth." *Dorland's Medical Dictionary* (25th ed), p 217.

Apparently Taylor did not have the money for the extraction. On October 21, she returned to the emergency room complaining of "severe throbbing" right jaw pain. A CT scan obtained that day revealed a small fracture of the tongue-side of the right mandible "at the region of the last molar." Dr. Baumstark removed the impacted wisdom tooth. Unfortunately, Taylor required an additional operation to remove a retained bone fragment. She also developed an infection near the operative site as well as "temporomandibular joint pain." Both conditions necessitated additional treatment.

Taylor's complaint alleges that McCarthy fractured Taylor's jaw during the intubation. According to Taylor's complaint, "[a]s a consequence of [McCarthy's] negligence, [Taylor] required multiple surgeries to repair the fracture and developed a significant infection requiring multiple hospitalizations and a prolonged course of intravenous antibiotics, as well as the sequelae therefrom. . . ." An affidavit of merit signed by Charles Barton, CRNA, avers that McCarthy used "excessive and/or inordinate force" when intubating Taylor, "which caused a fracture to the patient's mandible."

The parties obtained depositions of most of the physicians and dentists who treated Taylor. Although Dr. Baumstark conceded that the exposed alveolar bone "could be consistent with an injury received during intubation," he offered no opinion regarding the cause of Taylor's jaw fracture. Further, he declined to state "within a reasonable degree of medical certainty or probability" that the intubation had actually caused the exposed bone. Another treating dentist agreed that a jaw fracture should not occur during intubation "in the absence of negligence." The dentist offered no opinion regarding the cause of Taylor's fracture, or the relationship of the fracture to her other jaw-related problems.

Barton testified that in his view, Taylor's mandible fractured because McCarthy negligently failed to administer adequate paralytic medication before attempting to pass the endotracheal tube. Taylor's unrelaxed jaw muscle worked as a force opposing McCarthy's intubation efforts, Barton explained. He summarized: "I think the fracture occurred with the lifting of the jaw against the non-paralyzed masseter muscle that's resisting it. And that's why it snaps right at that level where the masseter muscle is and where the last molar is."

Defendants moved for summary disposition pursuant to MCR 2.116(C)(10), contending that Barton was unqualified to provide expert causation testimony and that Taylor had offered no other competent evidence of proximate cause. According to defendants, nurses such as Barton are not permitted to make medical diagnoses, automatically disentitling them to testify regarding the cause of a patient's disease or injury.

Taylor responded that Michigan law permits plaintiffs to establish causation with nonspeculative circumstantial evidence, and that in this case, the evidence pointed directly to the intubation as the cause of Taylor's jaw problems. Taylor further invoked the res ipsa loquitor doctrine. Taylor's brief did not address whether Barton was qualified to testify to proximate cause, and did not cite any of Barton's testimony. During the oral argument, McCarthy's attorney strenuously emphasized that Barton's testimony "simply can't give them causation." Taylor's counsel never addressed this argument.

In a written opinion, the trial court granted defendants' summary disposition motion. The court first noted, "Plaintiff concedes that she has no expert to testify as to causation." The court then rejected Taylor's argument that circumstantial evidence of causation sufficed, citing caselaw generally holding that expert testimony is necessary to establish a medical malpractice claim. Res ipsa loquitor, the court continued, allows a fact finder to infer negligence, but not proximate cause. The trial court concluded: "Leaving a jury of laypeople to speculate, in the absence of expert testimony, that Plaintiff's intubation caused the injuries in question is simply not proper." Taylor now challenges the trial court's summary disposition ruling.

## II. ANALYSIS

Taylor structures her appellate argument around Barton's deposition testimony, cited above, that McCarthy's negligence during the intubation caused Taylor's mandible fracture. According to Taylor's appellate brief, "[t]he trial court erred in disregarding the testimony of Mr. Barton, a CRNA, just like McCarthy." The brief continues, "His testimony, if believed, directly establishes 'proximate cause.' " (Citation omitted.)

Defendants contend that Taylor failed to preserve this challenge to the trial court's ruling. Defendants correctly assert that in the circuit court, Taylor failed to cite any testimony offered by Barton in support of her proximate causation claim. Accordingly, defendants insist, Taylor's current argument—that Barton's testimony sufficed to establish proximate cause—should not be considered.

We agree with defendants that Taylor's proximate causation argument in the trial court bears little resemblance to the argument she makes on appeal, and that Taylor failed to cite any portion of Barton's testimony in her trial court brief. Accordingly, we decline to consider it. See *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 375-379; 775 NW2d 618 (2009).

We find no merit in Taylor's remaining arguments. This Court has repeatedly held that in a medical malpractice case, "Expert testimony is essential to establish a causal link between the alleged negligence and the alleged injury." *Pennington v Longabaugh*, 271 Mich App 101, 104; 719 NW2d 616 (2006). We find this rule particularly applicable here, as Dr. Baumstark's testimony supports that Taylor's impacted wisdom tooth or the nearby infected bone may have caused or contributed to her jaw fracture.

Lastly, we reject Taylor's res ipsa loquitur argument on the same ground as did the trial court. "The major purpose of the doctrine of res ipsa loquitur is to create at least an inference of

-4-

negligence when the plaintiff is unable to prove the actual occurrence of a negligent act." *Jones v Porretta*, 428 Mich 132, 150; 405 NW2d 863 (1987). The doctrine does not supply an inference of proximate cause.

We affirm.

/s/ Peter D. O'Connell
/s/ Stephen L. Borrello
/s/ Elizabeth L. Gleicher