STATE OF MICHIGAN
COURT OF APPEALS

ZACK ATAKISHIYEV,

        Plaintiff-Appellee/Cross-Appellant,

v

DAVID CHENGELIS, M.D., and WILLIAM
BEAUMONT HOSPITAL,

        Defendants-Appellants/Cross-
        Appellees,

and

NOAMAN SYED ALI, M.D., and ADVANCED
LAPAROSCOPIC SURGERY, PC,

        Defendants.

UNPUBLISHED
September 19, 2017

No. 332299
Oakland Circuit Court
LC No. 2014-144312-NH

Before: GADOLA, P.J., and CAVANAGH and SWARTZLE, JJ.

PER CURIAM.

Defendants appeal by leave granted an order granting plaintiff's motion in limine to strike defendants' expert witness, Dr. Randal Baker, for articulating the wrong standard of care in this medical malpractice action. We reverse. Plaintiff cross-appeals the same order denying the remainder of his motion in limine to preclude testimony from defendants' expert witnesses, Baker and Dr. John Webber, on the ground that their testimony was not reliable. We affirm.

On December 19, 2012, defendant Dr. David Chengelis performed a Roux-en-Y gastric bypass and hernia repair on plaintiff. Chengelis performed the gastric bypass procedure laparoscopically, but found it necessary to open the abdomen to complete the hernia repair.

During his recovery, plaintiff vomited numerous times, including intestinal contents. Chengelis determined that plaintiff needed a second surgery to repair an acute small bowel obstruction, which Chengelis believed was related to the hernia repair. On December 21, 2012, Chengelis operated on plaintiff for the small bowel obstruction. Chengelis and the anesthesiologist discussed whether to use a nasogastric (NG) tube, but Chengelis decided against it because of the risk of perforating the fresh anastomosis from the gastric bypass procedure.

-1-

Plaintiff subsequently aspirated, causing aspiration pneumonitis that in turn caused adult respiratory distress syndrome (ARDS), a stage IV bed sore, and neuropathy in plaintiff's legs.

Plaintiff filed a medical malpractice action against defendants, alleging that the standard of care was breached by the failure to place an NG tube before the second surgery, although one was placed after plaintiff aspirated. Both parties retained expert witnesses who disputed whether Chengelis should have inserted an NG tube to avoid aspiration before plaintiff's second surgery.

Following discovery, plaintiff filed a motion to strike the testimony of defendants' two expert witnesses, Baker and Webber. Plaintiff argued that defendants' experts' opinions that an NG tube should not have been placed before the second surgery were based solely on their own personal opinions and experience. Their personal opinions were not supported by any medical or scientific literature, while medical literature strongly supported plaintiff's claim that an NG tube should have been placed.[1] Therefore, defendants' experts' opinions were scientifically unreliable and should be precluded under MCL 600.2955 and MRE 702. Further, Baker incorrectly defined "standard of care" as "[w]hat a *prudent* individual of similar experience and expertise would do," and incorrectly applied a local, rather than a national, standard of care. Thus, Baker should be precluded from testifying for these reasons also.

Defendants responded to plaintiff's motion in limine, arguing that the expert opinions of Webber and Baker were reliable. Defendants noted that their experts' opinions "are based on the facts of this case and their knowledge, training, and experience as board certified general surgeons." Defendants failed to cite to any literature in support of their experts' opinions, stating that not every issue that occurs is discussed in literature, and then proceeded to challenge plaintiff's supportive medical literature. Further, defendants asserted, Baker did not limit his testimony of the standard of care to a local standard, and his reference to the term "prudent" rather than "ordinary" with regard to the standard of care was not relevant; he clearly was familiar with and applied the correct standard of care to this case. Accordingly, defendants argued that plaintiff's motion in limine should be denied.

Following oral arguments, the trial court denied the motion as to the scientific reliability of defendants' experts' opinions, holding that a decision would be made at trial whether an expert opinion is based on sufficient foundation. However, the trial court granted the motion with respect to the testimony of Baker for articulating the wrong standard of care, i.e., one of prudence, a standard of care not applicable in Michigan. Thus, his expert opinion was unreliable and he was stricken as an expert witness.

---

[1] In brief, some of the medical literature relied upon by plaintiff included: (1) Cameron: Current Surgical Therapy, a textbook, (2) Laparoscopic Bariatric Surgery, a textbook, (3) Benchmarking Best Practices in Weight Loss Surgery, a journal article, and (4) OnSurg, When the Gastric Bypass Patient Shows Up, a journal article that Dr. Webber agreed "could" support plaintiff's position in this case.

On appeal, defendants argue that the trial court abused its discretion in striking Baker's testimony solely because he used the word "prudent" rather than "ordinary" to define the standard of care. We agree.

We review for an abuse of discretion a trial court's decision on a motion in limine. *Bellevue Ventures, Inc v Morang-Kelly Investment, Inc*, 302 Mich App 59, 63; 836 NW2d 898 (2013). "An abuse of discretion occurs when the decision results in an outcome falling outside the principled range of outcomes." *Woodard v Custer*, 476 Mich 545, 557; 719 NW2d 842 (2006) (citation omitted). "We review de novo questions of law underlying evidentiary rulings, including the interpretation of statutes and court rules." *Elher v Misra*, 499 Mich 11, 21; 878 NW2d 790 (2016).

"Generally, expert testimony is required in a malpractice case in order to establish the applicable standard of care and to demonstrate that the professional breached that standard." *Id*. (internal quotations and citation omitted). "The proponent of the evidence has the burden of establishing its relevance and admissibility." *Id*. at 22. "A party offering the testimony of an expert witness must demonstrate the witness' knowledge of the applicable standard of care." *Turbin v Graesser (On Remand)*, 214 Mich App 215, 217; 542 NW2d 607 (1995).

The parties agree that defendant Chengelis, a general surgeon, was a specialist. To prove a malpractice claim against a specialist, the plaintiff must show that the defendant

> failed to provide the recognized standard of practice or care within that specialty as reasonably applied in light of the facilities available in the community or other facilities reasonably available under the circumstances, and as a proximate result of the defendant failing to provide that standard, the plaintiff suffered an injury. [MCL 600.2912a(1)(b).]

The dispute over the exclusion of Baker's testimony arises from his answer that the definition of "standard of care" is what "a prudent individual of similar experience and expertise would do." Baker added that "it doesn't mean everybody would do it. It just means a prudent person of similar training and education would do" it. To explain why placing an NG tube in a recent gastric bypass patient did not fall below the standard of care, Baker testified that he thought

> that there are some prudent individuals of the same training and expertise who might consider putting an NG tube in, but I know that there's probably more, particularly in this state, who would not, so there are things that we disagree about in medicine because we don't—it's not an exact science, and that doesn't mean our disagreements constitute malpractice.

In granting plaintiff's motion in limine to exclude Baker's testimony, the trial court focused on Baker's use of the word "prudent" to define "standard of care," while the Michigan Model Civil Jury Instruction 30.01 provides, in relevant part:

> When I use the words "professional negligence" or "malpractice" with respect to the defendant's conduct, I mean the failure to do something which a [*name profession*] of ordinary learning, judgment or skill in [this community or a similar one/[*name particular specialty*]] would do, or the doing of something which a [*name profession/name particular specialty*] of ordinary learning, judgment or

skill would not do, under the same or similar circumstances you find to exist in this case.

The trial court noted that the words "prudent" and "ordinary" have "materially different" definitions. The trial court granted plaintiff's motion to exclude Baker's testimony because "it would be inappropriate to allow a jury to hear" his opinion, which was "based on an incorrect standard."

We agree with defendants that the trial court erroneously focused on the word "prudent" and should not have excluded Baker's testimony for this reason alone. A medical malpractice case is a professional negligence case, i.e., negligence by a physician. "Negligence" is defined as the "failure to exercise the standard of care that a reasonably prudent person would have exercised in a similar situation; any conduct that falls below the legal standard established to protect others against unreasonable risk of harm . . . ." *Black's Law Dictionary* (7th ed). "Malpractice" is defined as "[a]n instance of negligence or incompetence on the part of a professional." *Id*. With regard to medical malpractice cases, MCL 600.2912a, provides that a plaintiff must prove that the defendant physician failed to provide the standard of practice of care as recognized either in their local community if a general practitioner, or nationwide if a specialist. See *Bahr v Harper-Grace Hosps*, 448 Mich 135, 138; 528 NW2d 170 (1995). In other words, while a physician does not guarantee a particular result and generally cannot be held liable for the failure to provide a specific result, it can be said that a general practitioner "does guarantee to possess and **carefully** to apply such professional skill and learning as are ordinarily possessed by general medical practitioners in the locality in which he practices" and that "a specialist, by holding himself out as possessing special knowledge and skill in his branch of the medical profession, impliedly guarantees that he possesses learning and skill superior to those of the general practitioner, and that he will **carefully** apply them in his treatment or operation." *Jones v Porretta*, 428 Mich 132, 144-145; 405 NW2d 863 (1987) (emphasis supplied), quoting, in part, 27 ALR 1250, 1250-1255.

Therefore, Baker did not articulate or necessarily apply the "wrong" standard of care simply because he used the word "prudent," which is commonly understood to mean careful or cautious, in his definition of "standard of care." In fact, in *Locke v Pachtman*, 446 Mich 216, 225; 521 NW2d 786 (1994), our Supreme Court described a deficiency in an expert witness surgeon's testimony about the standard of care as a failure to explain "what a reasonably prudent surgeon would do, in keeping with the standards of professional practice, that might not have been done by [the defendant]." See also, e.g., *Sikkema v Metro Health Hosp*, 485 Mich 937, 938; 773 NW2d 908 (2009) (CORRIGAN, J., dissenting). Accordingly, the trial court's decision to strike the testimony of Baker as an expert witness because he used the word "prudent" in his definition of "standard of care" constituted an abuse of discretion and is reversed.

On cross-appeal, plaintiff argues that the opinion testimony of defendants' expert witnesses Baker and Webber was not scientifically reliable; thus, his motion in limine to preclude their testimony and strike them as expert witnesses should have been granted. The trial court held that it would wait until trial to determine whether defendants' experts' opinion

testimony was reliable and, thus, admissible. We agree with the trial court that a decision on plaintiff's challenge to the scientific reliability of defendants' experts' opinions at this juncture is premature and affirm that decision.[2]

However, we remind the trial court and the parties that, as our Supreme Court held in *Elher*, 499 Mich at 23, it is not sufficient to merely point to an expert's personal experience and background to support a claim that an expert's opinion is reliable. And while the lack of supporting literature is not dispositive, it is an important factor in determining admissibility. *Id*. As defendants argue, there may not be scientific or medical literature on every type of issue that can arise, but experts must still present a means to objectively and independently validate that an expert opinion is based on reliable principles and methods. See MRE 702; *Edry v Adelman*, 486 Mich 634, 641; 786 NW2d 567 (2010). A trial court properly excludes expert testimony in circumstances such as when the expert's opinion is based on his own personal beliefs; there is no evidence that an opinion is generally accepted within the relevant expert community; there is no peer-reviewed medical literature supporting an opinion; and when the opposing party submits contradictory medical literature. See *Elher*, 499 Mich at 14.

Reversed in part, affirmed in part, and remanded for further proceedings. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Mark J. Cavanagh
/s/ Brock A. Swartzle

---

[2] Further, we reject plaintiff's claim that Baker applied a local standard of care, rather than a nationwide standard of care, because of his brief reference to the fact that he did not know of any surgeon, even in Michigan, who would use an NG tube in these circumstances.